UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ROBERT BRUNELLE,

    Plaintiff,

v.                                                                                        Action No. 2:18cv290

NORFOLK SOUTHERN RAILWAY CO.,

    Defendant.

## UNITED STATE MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter comes before the Court on the motion of plaintiff, Robert Brunelle, to reopen this case and enforce a settlement agreement. ECF No. 47. The motion was referred to the undersigned United States Magistrate Judge on July 15, 2019, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 50. For the reasons discussed below, the undersigned recommends that the motion to reopen and enforce a settlement be **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

**A.  Relevant Procedural Background**

Plaintiff, Robert Brunelle ("Brunelle"), a former employee with defendant Norfolk Southern Railway Company ("Norfolk Southern"), filed an amended complaint on July 25, 2018. ECF No. 10 at 1–2, ECF No. 47 at 2. This one-count complaint alleged that Norfolk Southern violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12189, by "discriminat[ing] against [him] on the basis of disability when it removed him from service." *Id.* at 4.  Brunelle sought damages for lost income and emotional distress, as well as attorneys' fees and punitive

damages. *Id.* On October 17, 2018, Norfolk Southern filed its answer, largely denying Brunelle's allegations and disputing his entitlement to any relief. ECF No. 23.

The Court's Rule 16(b) scheduling order set this matter for a final pretrial conference on April 12, 2019, and a jury trial on April 24, 2019. ECF No. 26 at ¶¶ 1, 7–8. On March 4, 2019, Norfolk Southern filed a motion for summary judgment. ECF No. 28. Thereafter, Brunelle responded in opposition to the motion, ECF No. 36, and Norfolk Southern filed a reply. ECF No. 37.

Before the Court could rule on the summary judgment motion and convene the final pretrial conference, the parties filed a joint notice of settlement on April 10, 2019. ECF No. 45. That same day, the Clerk's Office notified the parties the case would be "dismissed agreed with prejudice" if the parties failed to submit a dismissal order within 11 days. When no such submission was received, the Court ordered the case to be "**DISMISSED AGREED** with prejudice" on April 23, 2019. ECF No. 46. This dismissal order also specified the Court retained jurisdiction over the case "solely for the purpose of enforcing the settlement agreement resulting in dismissal of the action." *Id.*

On June 20, 2019, Brunelle moved to reopen the case and enforce the settlement agreement and seeking an award of attorneys' fees and costs. ECF No. 47. Brunelle's filing contends that the sum and substance of the oral agreement to be enforced is Norfolk Southern's agreement to pay him $50,000.00 and his agreement to dismiss the case. *Id.* at 2; *See* ECF No. 47-1 at ¶ 3.[1]

---

[1] Exhibit 1 to Brunelle's motion is an *unsigned* declaration by Nicholas D. Thompson, Esq. ECF No. 47-1. During the October 9, 2019 hearing on the motion, Mr. Thompson signed the declaration, which was received in evidence and marked as court exhibit 1. Rather than directly identifying the terms of the alleged settlement, the declaration states, among other things: (1) Mr. Thompson "d[id] not recall . . . any terms other than dismissal of the case and what amount was to be paid;" and (2) Mr. Thompson's review of settlement correspondence found "none . . . which included terms other than dismissal of the case and the amount to be paid for it." *Id.* at ¶ 3.

2

Brunelle asserts that a proposed, written agreement later supplied by counsel for Norfolk Southern, contained additional terms not previously discussed, including a broad release covering claims arising after the parties negotiated the prior agreement. ECF No. 47 at 2, 4–5. Because Brunelle was reportedly removed from service due to an alleged workplace violation (occurring after the alleged oral settlement agreement) and was later terminated, Brunelle refuses to sign the proposed written agreement.[2] *Id.* at 2. To do so, Brunelle contends would release his right to challenge the subsequent termination. *Id.*

On July 5, 2019, Norfolk Southern filed a response in opposition to Brunelle's motion, which included a declaration from its attorney, Allyson L. Johnson, Esq.[3] ECF Nos. 48, 48-1. Norfolk Southern disputes that it agreed to settle this matter on the terms described in Brunelle's brief and the declaration of Nicholas D. Thompson, Esq. ECF No. 48 at 1, 4–6. Instead, Norfolk Southern contends counsel discussed that any agreement to settle was contingent upon execution of the company's "standard" agreement and release and, absent that, there existed no meeting of the minds as to the material terms of the agreement. *Id.* at 8–9. Norfolk Southern also argues that, even if Ms. Johnson had agreed to the simple agreement described by Mr. Thompson, she possessed no actual authority to do so and Norfolk Southern vested her with no apparent authority to enter into such an agreement. *Id.* at 5–6. Based upon the foregoing, Norfolk Southern contends that there is no settlement agreement to enforce and that Brunelle's motion, and his request for fees and costs, should be denied. Although Norfolk Southern's response indicates Brunelle's

---

[2] Brunelle was returned to service six months after the removal that formed the basis for his filing the complaint, ECF No. 21 at 2, and was again removed from service in April 2019, ECF No. 47 at 2.

[3] After entry of the Court's order dismissing this case, Ms. Johnson obtained new legal employment or about June 2019. ECF No. 47-6 at 3. Ms. Johnson has not sought leave of court to withdraw from representing Norfolk Southern.

3

motion should be denied, at the October 10, 2019 hearing, defense counsel agreed that, if the Court denied the motion to enforce, the motion to reopen the case for further proceedings should be granted. On July 9, 2019, Brunelle replied to Norfolk Southern's response in opposition. ECF No. 49.

After reviewing the parties' briefs and the attached exhibits, the Court issued an order on July 24, 2019 directing the parties to schedule the matter for an evidentiary hearing. ECF No. 51 at 5. The hearing was originally scheduled for September 3, 2019, but was postponed due to the illness of Mr. Thompson, Brunelle's lead counsel and a necessary hearing witness. The rescheduled hearing occurred on October 9, 2019. The Court received testimony from Mr. Thompson and Ms. Johnson.[4] Jonathan L. Stone, Esq., appeared at the hearing for Brunelle and Christine M. Costantino, Esq., appeared for Norfolk Southern. Jody Stewart was the court reporter.

## B. Hearing Testimony and Exhibits

The two hearing witnesses agree that they met on April 9, 2019, at Mr. Thompson's office, to prepare a draft pretrial order for the conference to be held on April 12, 2019. At the conclusion of the conference, Ms. Johnson inquired if Brunelle had any continued interest in trying to settle the case. Mr. Thompson responded by reiterating Brunelle's prior $50,000.00 demand and noting that, if the Court denied Norfolk Southern's summary judgment motion, the demand would increase. Ms. Johnson left the meeting without accepting the proposal.

After consulting with her client and while preparing to fly home, Ms. Johnson later called Mr. Thompson back on April 9, 2019. During this call, Ms. Johnson testified she told Mr.

---

[4] With the Court's permission, ECF No. 53, Ms. Johnson testified by video teleconference.

Thompson that Norfolk Southern was willing to settle with Brunelle for $50,000.00, subject to certain conditions. These conditions included that: (1) Brunelle must sign and not modify Norfolk Southern's standard settlement agreement and release, to be later forwarded by Ms. Johnson; and (2) Mr. Thompson must provide a breakdown regarding the allocation of the $50,000.00 between Brunelle and Thompson's law firm.[5] Ms. Johnson testified that Mr. Thompson said he was familiar with Norfolk Southern's standard agreement, due to the settlement of two earlier cases involving the company. Although Ms. Johnson did not recall whether Mr. Thompson accepted her proposal, she testified he voiced no objection to it.

Mr. Thompson testified somewhat differently about the call in question, while candidly conceding that he did not necessarily recall the entire conversation. He testified that Ms. Johnson called and advised that Brunelle's settlement demand was accepted and she may have said that any settlement was subject to a written agreement. He initially testified that, based on the call, he understood that Brunelle would have to sign some agreement to settle the case and that, if he did not do so, he would not get paid. Later, Mr. Thompson testified he did not think Brunelle needed to sign the agreement for it to be effective. While acknowledging he knew that Norfolk Southern's standard agreement included release language by virtue of one prior case, rather than two, Mr. Thompson testified that he did not advise Ms. Johnson he was familiar with Norfolk Southern's release and "was OK with it." When questioned by the Court, Mr. Thompson agreed that, during

---

[5] Ms. Johnson also testified that she thought she told Mr. Thompson that a significant portion of settlement would have to be allocated to Brunelle's wages. She reported they also discussed the need to notify the Court before the final pretrial conference on April 12, 2019.

5

this telephone call, he never stated that the settlement agreement was conditioned solely upon the agreed payment in exchange for dismissal of the case.[6]

Both Ms. Johnson and Mr. Thompson agree that any remaining communications between them occurred only by email.

On the morning of April 10, 2019, Mr. Thompson emailed Ms. Johnson and provided the breakdown for allocating the $50,000.00 between his law firm and Brunelle. Defendant's Exhibit ("Def.'s Exh.") 4 at 1.[7] Ms. Johnson responded by thanking Mr. Thompson and stating that she was "waiting on the agreement from the client." *Id.* After noon on April 10, 2019, Ms. Johnson emailed Mr. Thompson and stated that she intended to call the court to provide notice of the settlement and Mr. Thompson responded with his approval. Def.'s Exh. 5 at 2. Later that same day, Ms. Johnson sent Mr. Thompson a proposed joint notice of settlement, seeking his approval for filing. *Id.* at 1.

Following Mr. Thompson's approval in reply, *id.*, Ms. Johnson filed a joint notice of settlement with the Court on April 10, 2019 at 4:36 p.m. Def.'s Exh. 6; ECF No. 45. The joint notice specified that the parties "have reached a settlement" and "are in the process of finalizing the settlement documents." Def.'s Exh. 6 at 1. It further recited that "[o]nce the Parties execute

---

[6] This appears to be at odds with paragraph 3 of Mr. Thompson's pre-hearing declaration, which recites that he did "not recall us communication [sic] any terms other than dismissal of the case and what amount was to be paid." ECF No. 47-1 at 1; Court Exhibit ("Ct. Exh.") 1; *see also* ECF No. 47 at 2. It is also at odds with Mr. Thompson's June 18, 2019 email to the lawyer (Alex S. Drummond, Esq.) who later took over the negotiations for Ms. Johnson. Plaintiff's Exhibit ("Pltf.'s Exh.") 6 at 1. On June 18, 2019, Mr. Thompson wrote that "[n]othing other than the settlement amount and dismissal of the case was discussed during settlement negotiations (if you have correspondence that demonstrate[s] otherwise, please refresh my recollection, as I don't want to argue falsehoods to the court)." *Id.*

[7] The hearing exhibits are located at ECF No. 54-1.

6

the agreement and Defendant funds the settlement, Plaintiff will file the appropriate dismissal papers." *Id.*

On April 11, 2019, Ms. Johnson emailed Mr. Thompson a PDF file containing a document entitled "**SETTLEMENT AGREEMENT AND RELEASE**" and stated "[p]lease have [Brunelle] execute when you get the chance and we'll work on processing payment." Def.'s Exh. 7. Ms. Johnson testified that she sent the file in a PDF format to signify that the terms of the agreement were not to be changed. Later that same afternoon, Mr. Thompson responded asking Ms. Johnson to "[p]lease add $1,310.55 to our fees and costs." Def.'s Exh. 8 at 1. Mr. Thompson's response did not identify any other objections to the terms of the agreement. *Id.* Mr. Thompson testified, however, that he did not read the terms of the agreement until April 18, 2019, as discussed below, due to the press of other business.

On April 12, 2019, Ms. Johnson emailed Mr. Thompson a revised settlement agreement and release (again in a PDF file), which reflected a new allocation of monies between Mr. Thompson's law firm and Brunelle. *Id.* at 1, 3. The other terms of the document, some of which are discussed below, remained the same. *Id.* at 3–8. The "whereas" clauses of the agreement recited that Brunelle had filed the pending lawsuit, Norfolk Southern's denial of any liability, and Brunelle's representation that he had filed no other lawsuits, grievances, complaints, etc., against Norfolk Southern. *Id.* at 3. The agreement indicated that payouts associated with the $50,000.00 settlement would occur within thirty (30) days of Norfolk Southern's receipt of the signed agreement from Brunelle, as well as signed and completed W-9 forms from Brunelle and his attorney. *Id.* at 4, ¶ 1. In consideration for such payments, the agreement specified that Brunelle agreed to release Norfolk Southern, affiliated companies, their officers and employees, etc., from, among other things:

> any and all claims, demands, actions, causes of action, losses and expenses of every nature whatsoever, known or unknown, arising out of or in connection with any and all matters, transactions or things occurring prior to the date this Agreement becomes binding, including without limitation any and all possible claims, known or unknown, which could have been asserted by [Brunelle] against [Norfolk Southern], including but not limited to the claims and allegations contained in the afore-mentioned Lawsuit . . . including those arising out of or related in any way to: (a) [Brunelle]'s employment with Norfolk Southern . . . ."

*Id.* at 4, ¶ 2; *see also id.* at 4–6, ¶ 3 (noting the release also includes "any suits, actions, causes of actions, damages and claims . . . that [Brunelle] could file but has not filed or that have been brought," such as claims arising pursuant to a collective bargaining agreement). In a paragraph entitled "**Revocation and Effective Date**," the agreement gave Brunelle at least 21 calendar days to review and sign the agreement and specified that, after signing, Brunelle could revoke the agreement within 7 calendar days, using the procedures specified therein. *Id.* at 8, ¶ 10. The agreement further provided that it was neither valid nor binding nor enforceable until expiration of the revocation period. *Id.*

On April 16, 2019, Ms. Johnson emailed Mr. Thompson requesting that he forward a 2018 W-9 for his law firm and he did so by return email the same day. Def.'s Exh. 9 at 1.

On April 18, 2019, in response to Ms. Johnson's email requesting an update on Brunelle's signing of the agreement, Mr. Thompson reported that "Norfolk Southern just removed Brunelle from service for a supposed rule violation . . . ."[8] Def.'s Exh. 10 at 1. Based on this event and the broad release noted above, Mr. Thompson stated that he could not advise Brunelle to sign the agreement before knowing the outcome of the new matter. *Id.* Mr. Thompson also stated, however, "[i]f Norfolk Southern revises the agreement so that it releases only the claims that we

---

[8] Ms. Johnson testified that, prior to receiving Mr. Thompson's response, she was unaware of any issues regarding Brunelle's workplace conduct.

actually intended to release, I can have him sign it today." *Id.* Ms. Johnson did not respond to the proposal.

On June 10, 2019, Mr. Thompson emailed Ms. Johnson and told her that Brunelle had been terminated, was uncomfortable signing the "overly broad release," and inquired how she desired to proceed. Plaintiff's Exhibit ("Pltf.'s Exh.") 5. Because Ms. Johnson had left her law firm several days earlier, another lawyer (Alex S. Drummond, Esq.) responded in her stead. Pltf.'s Exh. 6 at 3. Although Mr. Thompson and Mr. Drummond exchanged several emails and spoke by telephone, they were unable to resolve the parties' differences. *Id.* at 1–3.

## II. ANALYSIS

"[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). The exercise of this authority "depends on the parties' agreement to a complete settlement," and "the court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." *Id.* "Thus, to exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id.* at 540–41. "In deciding whether a settlement agreement has been reached, the Court looks to the objectively manifested intentions of the parties." *Moore v. Beaufort Cty.*, 936 F.2d 159, 162 (4th Cir. 1991).

Generally applicable principles of contract law govern a court's inquiry into a motion to enforce a settlement agreement. *Bradley v. Am. Household, Inc.*, 378 F.3d 373, 380 (4th Cir.

2004). Here, the Court looks to Virginia contract law for guidance.[9] The requisites of a valid contract are offer, acceptance, and valuable consideration. *Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980). A party suing for breach of contract bears the burden of establishing that a binding and enforceable agreement exists. *See Knox Energy, LLC v. Gasco Drilling, Inc.*, 738 F. App'x 122, 124 (4th Cir. 2018) (citing *Valjar, Inc. v. Maritime Terminals, Inc.*, 265 S.E.2d 734, 736 (Va. 1980)). For a contract to be enforceable, there must be "mutual assent of the contracting parties to terms reasonably certain under the circumstances." *W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 493 S.E.2d 512, 515 (Va. 1997) (citation and quotation marks omitted).

The absence of a writing does not render a valid settlement agreement unenforceable. *See Alexander v. Indus. of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990). For a valid oral contract, "the terms of contract must be reasonably certain, definite and complete to enable the parties and the courts to give the agreement exact meaning." *Colonna's Shipyard, Inc. v. City of Key West*, No. 2:10cv63, 2011 WL 2634045, at *8 (E.D. Va. May 12, 2011) (citation and quotation marks omitted), *report and recommendation adopted*, 2011 WL 2633993 (E.D. Va. July 1, 2011).

A settlement agreement including a term that it must be reduced to a signed writing, however, is not enforceable until that condition is satisfied. *See Golding v. Floyd*, 539 S.E.2d 735, 736–38 (Va. 2001) (holding that, where the parties agreed a formal agreement had to be drafted and signed and was not a mere formality, an informal, handwritten settlement memorandum prepared at a mediation was not an enforceable, binding contract).

---

[9] In doing so, the Court follows the parties' lead. *See, e.g.,* ECF No. 47 at 4 (citing a Virginia case for the elements supporting a breach of contract); ECF No. 48 at 4 (citing Virginia cases on contract formation); Def.'s Exh. 8 at 7, ¶ 8 (specifying that the agreement "will be governed by and interpreted in accordance with the laws of the State of Virginia"); *see also Equitable Trust Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565, 567 (4th Cir. 1975) (noting that "Virginia adheres to the principle that the law of the place of performance governs questions arising in connection with the performance of a contract").

"[I]f an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is comparatively insubstantial." *Hensley*, 277 F.3d at 540 (quotation marks and citation omitted). If, however, factual disputes exist about an agreement's existence, its terms, or an attorney's authority to enter into it, the court must hold an evidentiary hearing to address the disputed matters and make findings. *Id.* at 541. After the hearing, if the court finds either that no settlement agreement was reached or the parties failed to agree "on all the material terms," then it must deny the motion to enforce and afford the plaintiff the opportunity to reopen and "proceed with his case on the merits." *Id.* at 541–42.

Having previously reviewed the parties' filings and supporting declarations and exhibits, the Court scheduled an evidentiary hearing to address the parties' disputes. ECF No. 51 at 5. Having now heard the testimony, the Court concludes, based upon all of the evidence, that the parties failed to reach a complete agreement to settle this case because Brunelle never signed the written agreement to settle, and because the parties never had a meeting of the minds on the terms of any release. The Court further finds that no complete, oral agreement to settle the case ever existed.

As to the need for a signed writing, the Court credits Ms. Johnson's testimony that she counter-offered and expressly conditioned any agreement to settle the case upon a written agreement signed by Brunelle. *See also* ECF No. 48-1 at ¶¶ 4–6. That Ms. Johnson told this to Mr. Thompson during their April 9, 2019 telephone conversation is corroborated by her first email to him the next morning. In response to Mr. Thompson's April 10, 2019 email specifying how much of the $50,000.00 should be allocated to his firm, Ms. Johnson responded, "Ok thanks. Just

11

waiting on the agreement from the client." Def.'s Exh. 4 at 1. Rather than questioning Ms. Johnson about this or disputing the need for a written agreement, Mr. Thompson said nothing about the matter in the ensuing emails between the two attorneys on April 10, 2019. Def.'s Exh. 5 at 1–2.

To the contrary, Mr. Thompson reviewed and approved by email a "joint notice of settlement" to be filed that same day by Ms. Johnson, *id.*, which also referred to settlement documents and the need for "the Parties [to] execute the agreement" prior to the filing any notice of dismissal. Def.'s Exh. 6 at 1. Further, after receiving the first draft of the settlement agreement and release on April 11, 2019, Def.'s Exh. 7, and the second draft on April 12, 2019, Def.'s Exh. 8, Mr. Thompson voiced no objection to the need for a signed, written agreement, despite having an opportunity to do so. *See* Def.'s Exh. 9 at 1. Instead, in response to Ms. Johnson's April 18, 2019 request for an update on when Brunelle intended to supply the signed agreement, Mr. Thompson responded by objecting to the terms of the proposed release, rather than to the fact that it was contained in a written agreement. Def.'s Exh. 10 at 1.

These facts lend no support to Mr. Thompson's pre-hearing declaration that the parties' agreement to settle the case consisted only of "dismissal of the case and the amount to be paid for it." Ct. Exh. 1 at 1, ¶ 3. Nor do they support the conclusion that, in responding to Mr. Thompson's earlier proposal reiterating his client's $50,000.00 demand, Ms. Johnson telephoned Mr. Thompson on April 9, 2019 and communicated Norfolk Southern's acceptance of Brunelle's

simple demand, rather than the counter-offer to which she testified.[10] *See* ECF No. 48-1 at ¶ 7. Thus, the Court finds the oral agreement that Brunelle seeks to enforce does not exist.[11]

This conclusion is supported not only by Ms. Johnson's testimony and the email exhibits noted above, but also by Mr. Thompson's hearing testimony. Regarding the April 9, 2019 telephone call, Mr. Thompson agreed he never told Ms. Johnson any settlement agreement was conditioned solely upon the agreed payment in exchange for dismissal of the case. Further, during the hearing (and in some emails), Mr. Thompson frankly admitted his memory of that call may be incomplete. He also conceded that, during the call, Ms. Johnson may have stated that any settlement was subject to a written agreement. The uncertain and inconsistent nature of Mr. Thompson's statements, viewed in light of the other evidence, make Brunelle's claim to enforce a simple pay for dismissal settlement agreement, predicated on the April 9, 2019 telephone call, untenable.[12]

---

[10] Because Ms. Johnson did not accept any proposal to pay in exchange for dismissal, the Court need not consider whether Ms. Johnson possessed actual or apparent authority to accept any such offer. *See* ECF No. 48 at 5–7; ECF No. 49 at 2.

[11] Also, not even Ms. Johnson recalled Mr. Thompson stating that Brunelle accepted the terms upon which she proposed to settle the case during their April 9, 2019 telephone call.

[12] Nor do the attorneys' written emails, which are mostly devoid of details about the material terms of any settlement, give rise to an enforceable agreement. The absence of such details distinguishes this case from the circuit court opinion, which Brunelle cited to the Court after the hearing. ECF No. 55 at 1. Unlike in this case, in *Cully v. Smith*, 2019 WL 3023627, at *1, *3–4 (Va. Cir. July 9, 2019), plaintiff's counsel and counsel for defendant's insurer exchanged emails comprising an offer and acceptance of a settlement on definite terms, not including a requirement for plaintiff's execution of a release. The second case cited in Brunelle's post-hearing filing is also distinguishable, as the agreement at issue there was not conditioned upon the defendants' execution of a written document. *See Norfolk Southern Ry. v. David Wilson Paint & Body Shop, Inc.*, 2004 WL 2937525, at *2, n.1 (N.C. Ct. App. Dec. 21, 2004).

Therefore, inasmuch as the proposed agreement required a writing to be signed by Brunelle, and it is undisputed that he has not signed, the Court finds the parties failed to enter into an enforceable, complete agreement.

Second, putting aside the absence of a signed writing, the Court also finds Brunelle and Norfolk Southern never had a meeting of the minds about the terms of any release. Whatever transpired during the April 9, 2019 telephone call, neither Ms. Johnson nor Mr. Thompson testified they discussed the terms of any release sought by Norfolk Southern and when it would take effect. Rather, the Court finds that Ms. Johnson told Mr. Thompson any settlement was conditioned upon Brunelle's signing of Norfolk Southern's standard agreement, a copy of which she promised to later supply. Although Norfolk Southern suggested that, by virtue of a recent, prior settlement of a case involving Norfolk Southern and another client of Mr. Thompson, Mr. Thompson then understood the nature of any release sought, the Court disagrees. The Court finds no reason to conclude Mr. Thompson assented to such a release during the telephone call, before receiving and reviewing the actual, proposed written agreement for Brunelle's case. Moreover, this conclusion is buttressed by Mr. Thompson's testimony that he recommended his client in the prior case not agree to the broad release terms proposed therein.

The Court also accepts Mr. Thompson's testimony that, due to the press of other business, he did not have an opportunity to review of the terms of either first or second drafts of Norfolk Southern's proposed settlement agreement and release until April 18, 2019. Upon doing so, and in light of new developments concerning Brunelle's removal from service due to an alleged workplace violation, Mr. Thompson objected to the breadth and the effective date of the proposed release. Def.'s Exh. 10.

The release proposed by Norfolk Southern applied, among other things, to all possible claims possessed by Brunelle, known or unknown, pertaining to any matters occurring before the agreement became binding, which would occur following the periods specified for Brunelle's review of the agreement, his signing of the same, and the expiration of the post-signing seven-day revocation period. Def.'s Exh. 8 at 4, ¶ 2; Def.'s Exh. 8 at 8, ¶ 10. In an April 18, 2019 email, Mr. Thompson stated that the broad, proposed release went beyond "the claims we actually intended to release," Def.'s Exh. 10 at 1, which he testified as being only those claims that existed as of April 9, 2019.[13]

The release associated with the proposed agreement was a material term upon which Brunelle and Norfolk Southern never agreed. Therefore, independent of the absence of the signed writing, this failure also supports the conclusion that the parties never reached a complete agreement to settle this case.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that plaintiff's motion to reopen the case, to enforce the settlement agreement, and for attorneys' fees and costs, ECF No. 47, be: (1) **DENIED IN PART** as to enforcement of any settlement agreement; (2) **GRANTED IN PART** as to reopening the case; and (3) **DENIED AS MOOT** as to any request for fees and costs.

### IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

---

[13] To the extent that Mr. Thompson's April 18th email indicates his understanding Norfolk Southern required a release of some sort, it is also inconsistent with his prior assertion that the parties agreed to settle the case based solely upon payment in exchange for dismissal of the suit.

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within 14 days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
October 18, 2019